United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this Honorable Court. Good morning. We have three appeals to hear this morning. Counsel, I hope you can see the clock and you're able to see the time and how much you've reserved. We're familiar with your cases, the authorities cited in your briefs, the portions of the record that are most material, if not the whole record, so you have limited time. Feel free to get straight to the heart of your argument. If you're not able to address something that's been raised in the briefs, you're of course not waiving anything. We're probably going to have some questions. Be mindful of the clock, but if you're answering a question from the court when the time expires, please feel free to finish your answer. And if you have time for rebuttal, you won't lose that so long as you're answering a question from the court. So we'll start with the United States v. Amede. Mr. Rosenbaum. Good morning, Your Honors. May it please the court. My name is Richard Rosenbaum. I represent Lindon Amede, who was tried and convicted for the offense of attempted possession with intent to distribute cocaine. This is another look at the underbelly of... Uh-oh. We have a frozen lawyer. Mr. Rosenbaum, you're frozen. Anthony? Yes, Stephanie, can you stop the clock? Amendment that was made when the... Mr. Rosenbaum? Yes, sir. I froze up for probably 20 seconds. So we're going to put your time back on the clock and let you start again. Thank you, Your Honor. I appreciate it, Judge Pryor. May it please the court. My name is Richard Rosenbaum. I represent Lindon Amede. Lindon Amede was tried and convicted for attempted possession with intent to distribute cocaine. This court, again, has an opportunity to look at the underbelly of the government's prosecution of individuals through a reverse sting transaction. The crux of the argument here surrounds the grand jury's indictment, which charged the defendant with knowingly and willfully attempting to possess with intent to distribute. That is, knowingly and willfully attempting to possess and intent to distribute. A dispute arose as to whether it was actually a willful and knowing indictment or whether it was just a knowing indictment. And the judge constructively amended the indictment to get rid of the willful instruction. And in doing so, based upon the hybrid defense here of duress and a lack of willfulness, the court reversibly erred and case law indicates that it's per se reversible error when there is a constructive amendment. Well, you would agree, would you not, that the law did not require the government to charge willfulness? The elements of the offense of attempted possession doesn't require it. Yes, sir. The statute refers to knowingly or and willfully. And therefore, by instructing on just the knowingly argument, the judge unlawfully, constructively amended the indictment in this case. This is an interesting case factually, because the judge asked what the proffer was of the duress, because the defendant intended to testify in his own defense. And the judge said that obviously he needed to meet the duress element. The judge focused on the third element, which was whether the defendant did everything possible to try to avoid going forward and telling the police or law enforcement what had happened, therefore getting him out of the defense. Mr. Rosenbaum, I have a question. If willfully is not an element of the offense, and I agree with you it was in the indictment, but wouldn't that make it extraneous in the indictment? If it's not part of the offense or surplus? If it was in the indictment but it was not needed, it was something extra in the indictment also charged knowingly, which is an element. The knowingly is, but since the indictment charged both willful and knowingly, the government A should be bound to that under the Fifth and the Sixth Amendments. And second, in this specific case, they can tell us the best case you have for that, when they have a charge that they're not required to prove. I believe that the best case is the Canciller case, which we cited on page 33 of the initial brief. That was a money laundering case, but that was one where the court, again, redacted the willfulness allegation. And the court in that case ruled that it was not surplusage in light of the actual case itself and the specific facts. Here we've got the direction. There was really a bait and switch, though, in conciliary, right, in terms of how the case was tried. And the jury's told this is going to be a case about his willful violation. The defendant tries to put on a good faith defense after the jury has been instructed by the court that it's going to be about willfulness. And then after the fact, the government is able to omit that from the final instruction. So it really ends up being a bait and switch that totally changes how the case is tried. It does, exactly, Your Honor. How is that true here, though? Well, it's true here where in the indictment, it says willful unknowingly. The defense is prepared to show that it's not willful. And the reason it's not willful ties in with the duress defense, that he didn't intend to do it. He had to do it. Other people who hadn't gone along with this terrorist Muslim gang had been beheaded. This defendant, Mr. Meade, had his car firebombed. He had his, if you believe at one point in the proceedings, his wife and his children had been taken. And he was threatened, basically, if he didn't do this deal, that bad things were going to happen. Mr. Rosenbaum, I have a record question. As I understand the record, pre-trial, before the trial, there was government move to delete willfulness from the jury instructions. And the court, pre-trial, before it began, granted the motion and said willfulness will not be an element, and it was deleted. I know they couldn't delete it in the indictment, but the district court before the trial, pre-trial, made it clear. I don't know the import of that. I just want to make sure that's what happened. Well, I don't believe that- There was a motion granted, the government's motion was granted to remove willfulness from the potential jury instructions before the trial began. Is that accurate? That is accurate. It was at the time the preliminary instructions were handed out. It was well before the charge conference. It was before the testimony had been taken. Isn't that totally different than from conciliary? Well, the government argues that it's invited error. Here- Let's assume it's not invited error, but it doesn't make it very different from the best case that you said you have to rely on. Well, it's a little bit off on the exact flavor of it, but it is along the same lines, and it's still a constitutional per se violation. It's still a constructive amendment. When you look at the facts of this case, it makes it even more important. It's true, the defense started out arguing that it wasn't willful and that it happened under duress, but the judge went through the duress analysis, and it appeared that the defendant wasn't going to be able to meet the elements, so the defense was told, don't elicit information concerning duress. Now, the government then sat on its hands and didn't make any objections, so while they argue invited error here, the government let the defendant testify as to the facts, and that was enough to then bring the willfulness back into being a very important factor in the willful and knowing attempted possession, and then that was the key to the defense testimony, and indeed, that's what the defendant was really focused on, although as it's put in the briefs, the entire defense case was rearranged as a result. The defendant was hesitant. He didn't know if he could really get into the true facts. He had been told he couldn't, so he held back a little in front of the jury, and we believe that if the duress ruling had been different and that but it's part of the actual constructive amendment to the indictment, and if that had all come out, whether it's per se error or whether we need to meet the good cause standard, in any event, Mr. Ameed contends that he met those standards, so you really have three different problems. The evidence was insufficient because they didn't establish the willful element. There was an improper amendment or constructive amendment to the indictment, and then there's the problem with the jury instruction at that point not saying willful and intentional or willful and knowing, so those are the arguments with regards to the indictment itself and the amendment. If the court has no questions on that, I'll touch briefly on another issue. Please. One of the issues at sentencing was that the defendant was forced to represent himself. At that point, there was no knowing voluntary waiver of his right to counsel. The best case that we have cited is the Jimenez and Tunis case. In this case, if the court looks at this factually, the defendant had a public defender, an assistant federal public defender throughout the trial proceedings. He then retained private counsel who never came to meet with him until the day before sentencing, didn't even bring the PSI. The defense was at that point filing his own pro se motions. Yes, the court agreed to hear both the trial counsel and the defendant's motions for a new trial, but here, the private counsel, there had been a total breakdown in communication between counsel and his lawyer. His lawyer made a very good record as to getting off the case, and unfortunately, the defendant was forced to go to sentencing unrepresented and unable to understand the ramifications of the safety valve despite the district judge's strenuous, gracious offerings for the defendant to accept it when the defendant had already given a three-hour statement where he accepted his responsibility. So the defendant just didn't get it. That's the whole reason, or one of the reasons, respectfully, for the Sixth Amendment is so that we have counsel. Okay, Mr. Rosenblatt, I have a record question. Yes, ma'am. Your client wanted to get Ms. Harris, who is the public defender, who the district court said was conflict-free, was highly competent, lots of experience, so he didn't want Ms. Harris originally. Is that correct? That is correct. Okay, and then, so he hired a retained attorney, and then he didn't want the retained attorney, and when, because he said the retained attorney was not prepared. But my record question is, I read all of the colloquy, and it was extensive. It seems to me that ultimately, the district court said, okay, I'll give you Ms. Harris again, because she was court-appointed. She knows the case. She tried it. That's one option. You can retain the attorney, or you can go pro se. He said those three options, and your client said, I want a new lawyer. I don't want Harris or my retained lawyer. Is that what happened? Now, whether it's a waiver or not is another thing. I'm just trying to understand. Ultimately, what happened is that you can have Ms. Harris, you can have your retained attorney, or you can go pro se. Factually, that's correct, Judge Hall. Okay, and so he said, no, I want, he first said, actually, I want to go pro se without counsel. Then a few minutes later, but let's put that aside. A few minutes later, he said, no, I want a new counsel, not either one of those two. Would that be accurate? That is accurate. That's all I need to know. Make sure I understood. Yes, Your Honor. Thank you. Mr. Rosenbaum, you were on our time there. You've saved three minutes for rebuttal. Judge Hall, you might want to try to increase the volume on your computer. If Mr. Rosenbaum's facial expressions, or if I'm understanding them correctly, he's having the same difficulty hearing you that I am. Okay, I was afraid you always tell me I'm too loud, so I was trying not to be so loud. You're good. Is that better? A little better. A little better. I can turn it up more. Is that better? I think so. Let's hear from Ms. Houser. Good morning, Your Honors, and may it please the court, Stephanie Houser for the United States, and also present via the public feed, is Trial AUSA, Kerry Aronovitz. On January 25, 2017, the appellant arrived for what he believed was a drug deal with almost $125,000 in cash to purchase five kilograms of cocaine. At trial, the government presented a plethora of evidence, including video of the reverse sting. In addition, the defendant testified that he, in fact, believed he was engaging in a drug buy. After the jury was instructed on the correct elements, as have been established at this point, of attempted possession with intent to distribute, which do not include this willfulness element, as well as being instructed on the appellant's duress defense, the jury convicted the appellant. At sentencing, as counsel noted, the district judge gave gracious offerings for the defendant to comply with the safety valve requirement to be sentenced below the statutory minimum, and also gave the appellant three options of having either his prior appointed counsel, his current retained counsel, or to proceed himself at sentencing. Ultimately rejecting all of those and waiving his right to counsel, knowingly and voluntarily, the defendant was sentenced to 121 months imprisonment, which is the low end of the guidelines range and just one month above the statutory minimum. The court should affirm this conviction and the sentence. I would like to touch on, I think, the two main points that were the topic of the appellant's argument here today, which is whether or not there was a constructive amendment of the indictment, and how that then, of course, affects the sufficiency of evidence, as well as what happened at sentencing. Turning to the consigliere case, it is clear that the willfulness element was mere surplusage in the indictment. That's established by long-binding case law from the Cruz Valdez lineup cases of this court. The one exception to the mere surplusage holding is if the defense rested entirely on refuting that erroneous element. And I think we have a big difference here between the consigliere case and this case. First of all, as Judge Pryor noted, in consigliere, there was a bait and switch in the jury instructions. The jury was initially instructed that there would be this good faith defense, which is a recognized defense to willfulness. Here, by contrast, the preliminary instructions that were given to the jury did not include willfulness. And that is the record at DE 149-105-06. So the jury was never told up front that there would be any defense to willfulness. But I do want to talk about what willfulness means. Willfulness means knowledge that you're engaging in illegal conduct. Willfulness has nothing to do with coercion. It has nothing to do with voluntariliness of your behavior. The defendant's defense here was duress. That's coercion. These are two different concepts. And I know throughout, the appellant has said, no, we were rebutting willfulness. He didn't engage in this voluntarily. He was being pressured. He was being coerced. That's duress. And the jury was instructed on that defense, and they still convicted the appellant. Duress has nothing to do with willfulness here. And so because of that, this case does not come within the exception of consigliere. If the court has no other questions or inquiries as to that argument, I'm happy to move on to sentencing. In the sentencing in this case, as the record has now been made clear, the defendant was given properly three options under the Gary case. Proceed with prior appointed counsel, proceed with his current retained counsel, or proceed pro se. Because the court had already ruled that there was no good cause for new appointed counsel, because the defendant cannot just unilaterally refuse to speak with his attorney, he was not entitled to at a later stage, just because he had retained counsel in the interim, to then have the court revisit that ruling and determine that he was then entitled to new appointed counsel. And I think the record's very clear from this December 7th, 2017 status conference, that the defendant's main complaints about his appointed counsel had to do with a mix-up with probation and the scheduling of a pre-sentence investigation interview. And the court made a defendant at the sentencing continued to insist that he wanted new counsel, a third attorney. He, by his conduct, waived his right to that counsel. And under the Gary case as well, the judge properly instructed him on the consequences of proceeding without counsel in that case. He advised him of the sentencing repercussions of proceeding without an attorney. He advised him specifically of his option to even go out into the hallway and give the prosecutor in that case a brief safety vow statement in order to qualify. And the defendant would not listen to the judge, the defendant would not speak with his attorney, and he refused to even, you know, go back and have his prior appointed attorney represent him. And for these reasons, the appellant knowingly and voluntarily waived his right to counsel at sentencing. And there was no error there. Unless the court has any other questions about any other points that were raised in this, the government would rest on what has been briefed and ask the court to affirm the conviction and the sentence in this case. Okay, Ms. Hauser, I don't hear any further questions. Mr. Rosenbaum, you've saved three minutes for rebuttal. Thank you, Your Honor. Again, may it please the court. The prosecutor says that the jury was not told up front about willfulness, yet the record will show that at the beginning of jury selection and the beginning of the case, the indictment itself was read. The indictment itself contained the words knowing and willingly because that's what the people wanted to charge the defendant with. We're entitled all the way back to the United States versus their own to know what we're being charged with. Here, the defendant knew he was charged with willfully and knowing his testimony was... Were there initial charges though at the start of the trial after the jury is picked? Did the district court instruct the jury? They were instructed, yes, sir. And that instruction did or did not include willfully. The instruction did not include willfully. Okay. Okay. And because of those reasons and the other reasons that we've argued in the briefs, the appellant respectfully requests this honorable court either reverse discharge, reverse grant a new trial or order a resentencing proceeding. And we thank you for your time today. Thank you. I know you were court-appointed Mr. Rosenbaum. We very much appreciate you accepting that appointment and discharging your responsibilities so well this morning. Thank you. Thank you, your honors. Have a good morning. You too.